UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOSEPH DONALD RUSSELL,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,[1]<br><br>Defendant. | NO. C12-1077-JLR-JPD<br><br>REPORT AND RECOMMENDATION |

Plaintiff Joseph Donald Russell appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be AFFIRMED.

I.   FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, Plaintiff was a 49-year-old man with an 11th grade education and a GED. Administrative Record ("AR") at 40. His past work experience

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. Therefore, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Commissioner Michael J. Astrue as the defendant in this suit. **The Clerk of Court is directed to update the docket accordingly, and the parties are ordered to update the caption on all future filings with the Court.**

REPORT AND RECOMMENDATION - 1

includes employment as a construction laborer. AR at 162-63. Plaintiff was last gainfully employed in 2005. AR at 150-52.

On June 9, 2008, he filed an application for DIB, alleging an onset date of October 12, 2005. AR at 140-42. Plaintiff asserts that he is disabled due to a shattered wrist, carpal tunnel syndrome, arthritis, cervical disc disease, and a learning disability. AR at 162, 181, 203.

The Commissioner denied Plaintiff's claim initially and on reconsideration. AR at 74-76, 80-84. Plaintiff requested a hearing, which took place on November 17, 2010. AR at 32-71. On March 18, 2011, the ALJ issued a decision finding Plaintiff disabled between his alleged onset date and March 23, 2009, but not disabled thereafter. AR at 12-26. Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-6, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On June 20, 2012, Plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 1.

## II.     JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.     STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in

REPORT AND RECOMMENDATION - 2

medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.     EVALUATING DISABILITY

As the claimant, Mr. Russell bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the

REPORT AND RECOMMENDATION - 3

national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[2]  If he is, disability benefits are denied.  If he is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities.  If the claimant does not have such impairments, he is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work

---

[2] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.   DECISION BELOW

On March 18, 2011, the ALJ found:

1. The claimant met the insured status requirements of the Social Security Act as of October 12, 2005, the date the claimant became disabled.

2. The claimant has not engaged in substantial gainful activity since October 12, 2005, the alleged onset date.

3. The claimant has the following "severe" impairments: status post open reduction with internal fixation left distal radius fracture; status post left ulnar shortening and triangular fibrocartilage complex (TFCC) debridement; status post left carpal tunnel release; status post anterior cervical discectomy and fusion at C4-5 and C5-6 (December 2008); learning disorder; and history of seizure disorder.

4. From October 12, 2005, through March 23, 2009, the period during which the claimant was disabled, the claimant did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. From October 12, 2005, through March 23, 2009, the claimant had the residual functional capacity to perform less than a full range of light work as defined in 20 C.F.R. § 404.1567(b). Specifically, he had no restrictions on standing, walking, or sitting throughout an 8-hour workday with normal breaks. He was unlimited in pushing and pulling with the right upper extremity and could lift and carry 20 pound occasionally and lift and carry 10 pounds frequently using both hands. Using his left hand alone, he could only lift and carry 10 pounds occasionally and lift and carry less than 10 pounds frequently. Overhead reaching was limited to frequent and he could frequently

REPORT AND RECOMMENDATION - 5

balance, stoop, kneel, crouch, and climb ramps and stairs.  He was limited to occasional crawling and restricted from climbing ladders, ropes, and scaffolding.  He could engage in frequent handling (gross manipulation) and occasional fingering (fine manipulation) with the left hand and had no manipulative restrictions on his right dominant hand.  He needed to avoid concentrated exposure to vibration and avoid moderate exposure to working at unprotected heights.  He could understand, remember, and carry out simple, 2-step to 3-step instructions as well as detailed instructions.  He could make judgments on simple and detailed work-related decisions and perform duties that can be learned on-the-job in a short period (i.e. in 90 days or less).  However, due to his left upper extremity limitations and chronic cervical pain with headaches, he was unable to perform sustained work activities in an ordinary work setting on a regular and continuing basis.  A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule.

6. From October 12, 2005, through March 23, 2009, the claimant was unable to perform past relevant work.

7. Born on XXXXX, 1961, the claimant was 44 to 48 years old from October 12, 2005, through March 23, 2009, which is defined in the regulations as "a younger individual age 18-49."

8. The claimant has at least a high school education and is able to communicate in English.

9. The claimant's acquired job skills do not transfer to other occupations within the residual functional capacity assessed for the period from October 12, 2005, through March 23, 2009.

10. From October 12, 2005, through March 23, 2009, considering the claimant's age, education, work experience, and residual functional capacity, there were no jobs that existed in significant numbers in the national economy that he could have performed.

11. The claimant was under a disability, as defined by the Social Security Act, from October 12, 2005, through March 23, 2009.

12. Medical improvement occurred as of March 24, 2009, the date the claimant's disability ended.

13. Beginning on March 24, 2009, the claimant has not had an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

14. Beginning on March 24, 2009, the claimant has had the residual functional capacity to perform light work as defined in 20 C.F.R. §

REPORT AND RECOMMENDATION - 6

404.1567(b). Specifically, he has no restrictions on standing, walking, or sitting throughout an 8-hour workday with normal breaks. He is unlimited in pushing and pulling with the right upper extremity and can lift and carry 20 pounds occasionally and lift and carry 10 pounds frequently using both hands. Using his left hand alone, he can only lift and carry 10 pounds occasionally and lift and carry less than 10 pounds frequently. Overhead reaching is limited to frequent and he can frequently balance, stoop, kneel, crouch, and climb ramps and stairs. He is limited to occasional crawling and restricted from climbing ladders, ropes, and scaffolding. He can engage in frequent handling and occasional fingering with the left hand and has no manipulative restrictions with regard to his right dominate hand. He needs to avoid concentrated exposure to vibration and avoid moderate exposure to working at unprotected heights. He can understand, remember, and carry out simple, 2-step to 3-step instructions as well as detailed instructions. He is able to make judgments on simple and detailed work-related decisions and perform duties that can be learned on-the-job in a short period (i.e. in 90 days or less). The claimant would have average ability to perform sustained work activities (i.e. can maintain attention and concentration; persistence and pace) in an ordinary work setting on a regular and continuing basis (i.e. 8 hours a day, for 5 days a week, or an equivalent work schedule) within customary tolerances of employers rules regarding sick leave and absence.

15. The medical improvement that has occurred is related to the ability to work.

16. From March 24, 2009, through the date of this decision, the claimant was 48 to 50 years old. On the date he attained age 50 (January 21, 2011), his age category changed to "closely approaching advanced age 50-54" under the regulations.

17. Since March 24, 2009, the claimant is still unable to perform past relevant work.

18. Beginning on March 24, 2009, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

19. Beginning on March 24, 2009, considering the claimant's age, education, work experience, and residual functional capacity, the claimant has been able to perform a significant number of jobs in the national economy.

20. The claimant's disability ended on March 24, 2009.

REPORT AND RECOMMENDATION - 7

AR at 15-26.

## VI.   ISSUES ON APPEAL

The principal issues on appeal are:

1. Whether the ALJ erred when discounting Plaintiff's credibility as to subjective symptoms occurring since March 24, 2009?

2. Whether the ALJ's assessment of Plaintiff's RFC post-March 24, 2009, accounts for all of the limitations the ALJ purported to credit?

Dkt. No. 12 at 1.

## VII.   DISCUSSION

A.   <u>The ALJ Did Not Err in Discounting Plaintiff's Credibility After March 24, 2009.</u>

Plaintiff contends that the ALJ erred in discounting Plaintiff's credibility as to his testimony about the headaches he experienced after March 24, 2009.  Though Plaintiff acknowledges that the ALJ provided a number of clear and convincing reasons to discount the credibility of Plaintiff's testimony regarding his physical impairments, he argues that the ALJ failed to specifically address the testimony about his severe headaches that cause pain and limit his ability to concentrate when assessing his credibility.  Dkt. 14 at 1-2.

There are at least two flaws in Plaintiff's argument.  First, it appears that Plaintiff misunderstands the scope of an ALJ's credibility determination: an ALJ need not explicitly assess the credibility of every individual statement made by Plaintiff, but must determine whether Plaintiff is a credible witness by applying "ordinary techniques of credibility evaluation," which can include the claimant's reputation for truthfulness, inconsistencies in the claimant's testimony or between the testimony and conduct, the claimant's daily activities, the claimant's work record, the claimant's demeanor at the administrative hearing, and the objective medical record.  *See Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  An ALJ may properly consider whether

a claimant's particular complaints are credible, and if they are not, then the ALJ may properly discount a claimant's credibility generally. *See Turner v. Comm'r of Social Sec. Admin.*, 613 F.3d 1217, 1224-25 (9th Cir. 2010) (explaining that an ALJ's finding that a claimant's testimony regarding physical impairments lacks credibility provides support for an ALJ's rejection of claimant's alleged mental complaints). Thus, the Court rejects Plaintiff's assertion that the ALJ was required to explicitly address the credibility of every statement made by Plaintiff; Plaintiff's concession that the ALJ provided adequate reasons to discount his credibility as to physical impairments is fatal to this assignment of error.

But secondly, even if the ALJ was required explicitly address all categories of testimony, the ALJ *did* explain why he discounted Plaintiff's testimony regarding the limiting effects of his headaches. The ALJ pointed to medical evidence that Plaintiff ceased participation in physical therapy by August 2009 in part because he felt he was "doing very well," with no spasms and 50% fewer headaches. AR at 426. The ALJ also pointed to Plaintiff's December 2009 statement that he did "not believe my . . . headaches[] present barriers to me proceeding with vocational services, plan development." AR at 483. Though Plaintiff testified that his headaches impaired his ability to concentrate (AR at 51), the ALJ also pointed to Plaintiff's self-report showing that he could complete tasks that require concentration, such as cooking meals, working on old cars, attend school, and driving his daughter to school and events multiple times a week. AR at 23 (citing AR at 171, 173, 186-99, 209-37). These inconsistent statements and daily activities are convincing reasons to discount the credibility of Plaintiff's headache testimony. *See Molina*, 674 F.3d at 1112.

B.  <u>The ALJ Did Not Err in Assessing Plaintiff's RFC After March 24, 2009.</u>

Plaintiff's second assignment of error focuses on the medical opinion of Ellen Walker Lind, Ph.D., who evaluated Plaintiff in January 2009. She diagnosed Plaintiff with a learning

disorder, due to slow processing speed, and assigned a Global Assessment of Functioning score of 42. AR at 389-93. Dr. Lind believed that his headaches "may be causing him to process information more slowly that he normally would[.]" AR at 392. Dr. Lind found "no reason that [Plaintiff] should not be able to succeed in many kinds of retraining programs once his pain condition is better managed." AR at 392. The ALJ specifically discounted Dr. Lind's GAF score as "internally inconsistent with the clinical and objective findings as well as with the claimant's activities of daily living." AR at 24.

According to Plaintiff, the ALJ's reasoning with regard to Dr. Lind's GAF score is inadequate because the ALJ did not identify the precise inconsistencies that led him to discount the GAF score. Dkt. 14 at 5. Plaintiff's argument overlooks the context of the ALJ's entire paragraph regarding Dr. Lind's opinion, however: the ALJ summarized Dr. Lind's findings, mentioning her opinion that Plaintiff "has solid academic abilities; he is a good reader and speller and he has very strong math skills. There is no reason that he should not be able to succeed in many kinds of retraining programs once his pain condition is better managed"; and her findings that Plaintiff's IQ scores were in the low-average or average range. AR at 24 (citing AR at 392). It is reasonable to infer that the ALJ cited these findings as evidence of findings inconsistent with a GAF score of 42, which indicates serious symptoms or serious difficulties in social or occupational functioning, and this inference is reasonable. *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) ("As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion.") Furthermore, the ALJ discussed Plaintiff's daily activities at length on the previous page of the decision, explaining why he found those activities to indicate an ability "to engage in a normal level of daily activity, social interaction, and activities that require concentration." AR at 23. The ALJ's decision as a whole thus adequately explains why the ALJ discounted

REPORT AND RECOMMENDATION - 10

Dr. Lind's conclusion that Plaintiff experienced serious symptoms or serious difficulties in social or occupational functioning.

To the extent that Plaintiff also argues that the ALJ's RFC assessment does not account for the slow processing speed identified by Dr. Lind, the Court disagrees. The ALJ restricted Plaintiff to performing duties that can be learned on the job in 90 days or less, which accounts for a learning deficiency. Dr. Lind opined that Plaintiff's learning disorder would not prevent him from succeeding in retraining programs, and she did not attribute any functional vocational limitations specifically to the learning disorder. AR at 392 ("Mr. Russell is encouraged to explore career-training options and to consider a profession that will allow him to utilize his strong visual/spatial skills.")

Though Dr. Lind speculated about Plaintiff's pain symptoms, and the effect of Plaintiff's pain and pain medication on his ability to process information, she is not a pain specialist and did not specifically evaluate Plaintiff's pain, but only recorded his self-report of it. AR at 392-93 (recording Plaintiff's "chronic headache pain, per patient's report"). Furthermore, as explained in the previous section, the ALJ properly discounted Plaintiff's testimony regarding his subjective pain. *See supra*, Part VII.A. For these reasons, Plaintiff has not shown that the ALJ's RFC assessment failed to account for credited opinions of Dr. Lind, and thus this assignment of error fails.

//
//
//
//
//

## VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be AFFIRMED.  A proposed order accompanies this Report and Recommendation.

DATED this 6th day of March, 2013.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION - 12